UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ENRIQUE ELSEY,

  Plaintiff,

v.

PASCO SCHOOL DISTRICT NO. 1,

  Defendant.

Case No. **4:25-cv-05183-SAB**

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. § 1983)
(JURY TRIAL DEMANDED)

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 19 2025

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

## I. NATURE OF THE ACTION

1. This is a civil rights action for declaratory, injunctive, and monetary relief arising under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. 42 U.S.C. § 1983.

2. Plaintiff Enrique Elsey ("Plaintiff") was a just-cause public employee. Defendant Pasco School District No. 1 ("District") terminated Plaintiff on June 4, 2025 based on allegations of a cocaine-positive post-incident drug test, while Plaintiff timely disputed test identity/attribution and the integrity of the collection paperwork trail.

Before terminating Plaintiff, the District had notice that Plaintiff disputed the drug test as not his and requested an investigation into the laboratory/results. Despite the high risk of error inherent in acting on disputed drug-testing evidence in a safety-sensitive position, the District proceeded without providing Plaintiff a meaningful opportunity to obtain or confront the underlying chain-of-custody documentation or an adequate explanation of the evidence relied upon.

4. Despite those integrity/identity disputes and Plaintiff's objection, the District proceeded to terminate Plaintiff without constitutionally adequate process and without a meaningful opportunity to respond to the District's evidence, and it failed to provide a timely post-termination name-clearing hearing.

## II. JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331. 28 U.S.C. § 1331.

6. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3). 28 U.S.C. § 1343(a)(3).

7. Venue is proper in this District because Defendant resides in this District and because the events and omissions giving rise to these claims occurred in this District.

## III. PARTIES

8. Plaintiff Enrique Elsey is an individual residing in Pasco, Washington.

9. Defendant Pasco School District No. 1 is a Washington municipal corporation and local governmental entity that operates public schools and employs staff, including school bus drivers, in Benton and Franklin Counties.

10. At all relevant times, Defendant acted under color of state law.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's public employment, just-cause protection, and safety-sensitive role

11. Plaintiff worked for the District as a school bus driver in a safety-sensitive role requiring a Commercial Driver's License ("CDL").

12. Plaintiff was a bargaining unit employee whose employment was governed by a collective bargaining agreement ("CBA") providing that the District shall not discipline or discharge an employee without just cause.

13. The District and Teamsters Local 839 executed a Memorandum of Understanding extending the CBA term through August 31, 2025.

14. By virtue of the CBA and related understandings and practices, Plaintiff had a protected property interest in continued employment absent just cause. Board of Regents of State Colleges v. Roth; Perry v. Sindermann.

### B. The District's asserted FMCSA/DOT testing framework

15. The District maintained Board Policy 5259 and Procedure 5259P, which the District represented as an "FMCSA-mandated" controlled substances and alcohol testing program.

16. Federal motor-carrier controlled-substances testing is governed by federal statutory and regulatory requirements, including 49 U.S.C. § 31306 and 49 C.F.R. Part 40. 49 U.S.C. § 31306; 49 C.F.R. pt. 40.

17. Those federal requirements include formal custody-and-control and specimen-collection procedures, including the use and handling of custody-and-control documentation and split-specimen collection processes. 49 C.F.R. § 40.40; 49 C.F.R. § 40.41; 49 C.F.R. § 40.63; 49 C.F.R. § 40.83.

18. The District's own FMCSA testing procedure (5259P) distinguishes an initial screening test from subsequent steps, including verification by an MRO and verified test results.

### C. May 20, 2025 incident, collection, and DOT CCF donor copy

19. On or about May 20, 2025, after a workplace incident, the District directed Plaintiff to undergo a post-incident urine test.

20. Plaintiff complied.

21. At collection, Plaintiff was presented with, signed, and received the donor copy (Copy 5) of a "Federal Drug Testing Custody and Control Form." Plaintiff's donor copy reflected an accession/identifier number 2093133975.

22. Plaintiff observed split specimen collection and initialed the tamper-evident seals applied to the specimen bottles/tubes.

23. At the time Plaintiff left the testing site, Plaintiff had not been informed that any "non-DOT" test or non-federal CCF would govern the collection; Plaintiff did not sign or receive any non-federal/non-DOT custody and control paperwork reflecting the later identifier 2086302345.

## D. Admissions by the collector that the paperwork was switched after Plaintiff left, and that original paperwork was destroyed

24. On June 3, 2025, Plaintiff participated in a phone call with the collection technician/collector, Shirley Claflin ("Collector").

25. In that call, the Collector admitted, in substance, that:

   a. The collection began on a federal form but was later switched or converted to a non-federal/non-DOT form;

   b. The Collector discussed or decided the switch after "talking to the supervisor" and/or "with [Plaintiff's] boss," indicating District supervisory involvement;

   c. The original paperwork associated with the federal form was destroyed;

   d. The Collector instructed Plaintiff to destroy the donor copy in Plaintiff's possession;

   e. The Collector stated that the test was "under" identifier 2086302345 and that Plaintiff "just didn't get" the non-federal paperwork.

26. These admissions establish that material chain-of-custody documentation associated with a federally initiated form was altered and destroyed after Plaintiff left the collection site, and that the District's supervisory personnel were involved in or informed of the conversion decision.

## E. The MRO's identifier mismatch and "accession/specimen" explanation

27. In late May 2025, Plaintiff contacted the MRO office to inquire about the status and identity of the test.

28. Plaintiff provided the identifier from Plaintiff's donor copy (2093133975). The MRO representative indicated that the accession and specimen identifiers should match, but the representative could not locate a record for Plaintiff under 2093133975.

29. The MRO representative advised that the MRO office had a file for Plaintiff under a different identifier (2086302345), and stated that the file corresponded to Plaintiff's name and phone number.

30. The foregoing created an immediate, concrete dispute concerning test identity/attribution and the integrity of the collection paperwork trail.

## F. i3screen compliance communications confirming the lab never received the federal/DOT CCF identifier and that the report sent was "non-DOT" under the different identifier

31. Plaintiff contacted i3screen compliance to clarify whether the laboratory ever received the federal/DOT CCF identifier reflected on Plaintiff's donor copy.

32. The i3screen Director of Compliance stated in writing that:

   a. The laboratory had no record of receiving a test for CCF 2093133975;

   b. The MRO report sent to the District was for CCF 2086302345; and

   c. The report sent was described as a "NON DOT test."

33. These statements corroborate Plaintiff's identity/attribution objection and demonstrate that the District's termination decision involved a disputed and inconsistent paperwork trail.

## G. June 4, 2025 pre-disciplinary notice, meeting, and termination

34. On June 4, 2025, the District issued Plaintiff a written pre-disciplinary notice stating it had reason to believe Plaintiff violated District Policy 5258, District Policy 5259, and WAC 392-144-103.

35. On June 4, 2025, the District held a pre-termination meeting with Plaintiff and union representatives.

36. At and before that meeting, Plaintiff raised the substance of his objection: Stating that "That drug test isn't mine. There needs to be an investigation into the laboratory and there needs to be an investigation into the drug test results".

37. District decisionmakers did not provide Plaintiff with the complete underlying documentation necessary to respond meaningfully to the asserted test evidence, including the full chain-of-custody paper trail and any complete MRO verification packet.

38. Instead, the District proceeded to terminate Plaintiff that same day, stating that the "quick test" was positive for cocaine and that a lab test was positive for cocaine.

39. The District's termination letter stated that Plaintiff violated District Policy 5258, District Policy 5259, and WAC 392-144-103, and it terminated Plaintiff effective immediately.

## H. Stigmatizing record, lack of name-clearing hearing, and public-records disclosure risk

40. The District's termination letter and related documentation accuse Plaintiff of cocaine use and/or a cocaine-positive test result as the basis for discharge.

41. Those allegations are stigmatizing and impair Plaintiff's professional reputation and employment prospects in the safety-sensitive transportation field.

42. Plaintiff disputes the substantial truth/accuracy of the stigmatizing allegations, including because the District's evidence trail reflects inconsistent identifiers and because (as i3screen compliance confirmed) the laboratory had no record of receiving the CCF identifier on Plaintiff's federal/DOT donor copy.

43. The District did not provide Plaintiff a timely post-termination name-clearing hearing.

44. The District maintains personnel and termination records that are subject to disclosure and/or release under Washington public records law, subject to exemptions. RCW 42.56.070; RCW 42.56.080; RCW 42.56.250.

## V. CLAIMS FOR RELIEF

### COUNT 1: Procedural Due Process – Deprivation of Property Interest (Fourteenth Amendment)
(42 U.S.C. § 1983)

45. Plaintiff incorporates by reference paragraphs 1–44.

46. Plaintiff had a protected property interest in continued public employment because he was a just-cause employee under a CBA and related understandings and practices. Board of Regents of State Colleges v. Roth; Perry v. Sindermann.

47. The District deprived Plaintiff of that protected property interest by terminating his employment on June 4, 2025.

48. A public employer must provide, at minimum, notice of the charges, an explanation of the employer's evidence, and an opportunity to respond before terminating a just-cause public employee. Cleveland Bd. of Educ. v. Loudermill.

49. The adequacy of process is evaluated by balancing (a) the private interest affected, (b) the risk of erroneous deprivation and value of additional safeguards, and (c) the government's interests and burdens. Mathews v. Eldridge.

50. Here, the risk of erroneous deprivation was high because:

   a. Plaintiff possessed the donor copy of a federal/DOT CCF identifier (2093133975);

   b. The MRO office could not locate Plaintiff's test under that identifier and instead referenced a different identifier (2086302345);

   c. i3screen compliance confirmed the laboratory had no record of receiving CCF 2093133975 and stated the report sent to the District was a non-DOT report under 2086302345; and

   d. The Collector admitted post-collection switching from federal to non-federal paperwork and destruction of original paperwork, after discussion with District supervisory personnel.

51. Despite these concrete evidentiary/identity disputes and Plaintiff's objection, the District failed to provide Plaintiff a meaningful opportunity to respond to the District's evidence and failed to take minimally burdensome safeguards to verify the identity and integrity of the evidence before termination.

52. Under these circumstances, the District's June 4, 2025 process was constitutionally inadequate under the standards governing public employment termination. Cleveland Bd. of Educ. v. Loudermill; Mathews v. Eldridge; Gilbert v. Homar.

53. As a direct and proximate result, Plaintiff suffered damages.

**COUNT 2: Liberty Interest (Stigma-Plus) / Failure to Provide Name-Clearing Hearing (Fourteenth Amendment)**
(42 U.S.C. § 1983)

54. Plaintiff incorporates by reference paragraphs 1–44.

55. The District's termination documentation and stated reasons accused Plaintiff of cocaine use and/or a cocaine-positive test result as the basis for discharge.

56. Those allegations are stigmatizing and were made in connection with termination, satisfying the "plus" component through the alteration of Plaintiff's legal status as a terminated public employee. Board of Regents of State Colleges v. Roth; Paul v. Davis.

57. Plaintiff disputes the substantial truth/accuracy of the stigmatizing allegations and disputes that the District possessed a reliable, properly attributed test record supporting the asserted cocaine-positive termination rationale. A name-clearing hearing is required where the employee disputes the substantial truth of stigmatizing information disseminated in connection with termination. Codd v. Velger.

58. The District's stigmatizing termination information is maintained in personnel/termination records and is subject to disclosure and dissemination in ways that constitute "publication,"

including through Washington's public records disclosure framework, subject to exemptions. Cox v. Roskelley; RCW 42.56.070; RCW 42.56.080; RCW 42.56.250.

59. The District failed to provide Plaintiff a timely and meaningful name-clearing hearing.

60. As a direct and proximate result, Plaintiff suffered damages.

61. Plaintiff anticipates Defendant may contend no liberty interest is implicated absent publication; Plaintiff alleges publication/dissemination as described above and further alleges that the stigma-plus doctrine requires more than reputational harm alone. Bishop v. Wood; Siegert v. Gilley.

62. The Ninth Circuit recognizes that publication of stigmatizing information in connection with termination without a name-clearing hearing violates due process. Cox v. Roskelley; Mustafa v. Clark County Sch. Dist..

### COUNT 3: Municipal Liability (Monell)
(42 U.S.C. § 1983)

63. Plaintiff incorporates by reference paragraphs 1–62.

64. The District is a "person" subject to liability under 42 U.S.C. § 1983, but is liable only for constitutional injury caused by its official policy, custom, or practice. Monell v. Dep't of Soc. Servs.; 42 U.S.C. § 1983.

65. Plaintiff's constitutional injuries (Counts 1 and 2) were caused by and/or were the moving force of the District's policies, practices, and decisions, including:

   a. The District's adoption and enforcement of its FMCSA testing policies and procedures and the District's implementation decisions under those policies;

   b. The District's decision, through District supervisory personnel in consultation with the Collector, to reclassify or convert Plaintiff's collection paperwork from federal/DOT documentation to non-federal/non-DOT documentation after collection and after Plaintiff left the site;

   c. The District's decision to proceed to termination without meaningfully resolving the identity/attribution dispute and without providing a meaningful opportunity to respond to the District's evidence;

   d. The District's maintenance and dissemination of stigmatizing termination records without a name-clearing hearing.

66. A single decision by an official with final policymaking authority in the relevant area may constitute municipal policy. Pembaur v. City of Cincinnati.

67. Whether an official has final policymaking authority is determined by state and local law, and Plaintiff alleges on information and belief that District officials with final policymaking authority over discipline/termination and/or implementation of the District's testing program approved, directed, and/or ratified the actions described above. City of St. Louis v. Praprotnik.

68. To the extent Plaintiff pleads an alternative theory of inadequate training/supervision in implementing the District's FMCSA testing program and evidence-preservation obligations, Plaintiff alleges the District acted with deliberate indifference and that such omissions were the

moving force behind the constitutional violations. City of Canton v. Harris; Connick v. Thompson; Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown; Oklahoma City v. Tuttle.

69. As a direct and proximate result, Plaintiff suffered damages.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against Defendant and award the following relief:

A. A declaration that Defendant violated Plaintiff's Fourteenth Amendment rights to procedural due process and to a name-clearing hearing;

B. Injunctive relief requiring Defendant to:

　1. Provide a timely name-clearing hearing consistent with due process;

　2. Correct, expunge, or annotate stigmatizing termination records as appropriate to reflect that Plaintiff disputes the substantial truth/accuracy of the cocaine-positive basis and that the underlying record trail is disputed; and

　3. Preserve and produce, under Court supervision, the records necessary to adjudicate the test-identity and chain-of-custody disputes;

C. Compensatory damages in an amount to be proven at trial;

D. Costs of suit; and

E. Such other and further relief as the Court deems just and proper.

VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted this 19th day of December, 2025.

_/s/ Enrique Elsey_

Enrique Elsey, Pro Se

Address: 615 N. Wehe

Pasco, WA 99301

Telephone: 509-721-7061

Email: misterelsey@gmail.com